MICHAEL GARETY, Respondent, *v.* CHARLES MEADS AND COMPANY, Appellant, Impleaded with T. M. REYNOLDS CONTRACTING COMPANY, INC., and Another, Defendants.

First Department, March 13, 1936.

*Joseph E. Kinsley* of counsel [*Desmond T. Barry* and *August P. Klein* with him on the brief; *Bacon & Tippett*, attorneys], for the appellant.

*Milton Speiser* of counsel [*Joseph Speiser* with him on the brief; *Speiser & Speiser*, attorneys], for the respondent.

GLENNON, J.  This case brings up for review a judgment based upon a verdict of a jury in the sum of $12,500, and also the order denying defendant Charles Meads and Company's motion to set aside the verdict and dismiss the complaint.  The action was in negligence.

There was sufficient evidence upon which to submit the case to the jury and consequently the court properly denied the motion to dismiss.  However, we are of the opinion that the judgment should be reversed and a new trial ordered on two grounds: *First.* The court erred in admitting in evidence section 196 of the Code of Ordinances of the City of New York, and in charging the jury that it was to be considered on the question of negligence.  *Second.* The verdict as rendered was excessive.

A brief *résumé* of the facts will suffice to indicate our reasons for reversing the judgment and affirming the order of the court in so far as it refused to dismiss the complaint.

The appellant had a contract with the city of New York for the station finish work of the Broadway-Fourth Avenue Rapid Transit railroad, in which was included the subway station at Broad street and Exchange place. Plaintiff was employed for a period of three days as a tilesetter's helper by the Pompeii Tile Works which had a subcontract from the appellant to furnish the tiling in the station.

Shortly before eight o'clock on the morning of October 24, 1930, plaintiff, in the company of one Cooke, a fellow-employee, went down the stairway from the street to the unfinished station platform. Cooke switched on a pocket searchlight and went west on the platform toward the track, whereas plaintiff walked in a northerly direction and fell into an unguarded stairway opening leading from the platform to an underpass. He said, in substance, that there was just enough light to see the platform, " You could see the platform was there, gray, as you walked along and see the platform, looked good in front of you." He was removed to the Broad Street Hospital where he remained for about three or four weeks. According to his testimony, for a space of from three to five months he visited the hospital twice or three times a week for further treatment. However, he said that within a week or two after he left the hospital, and within six or seven weeks after the accident, he procured work as a tilesetter's helper from another employer, with whom he remained for a period of three and one-half months, and received the same rate of pay that he was entitled to obtain from the Pompeii Tile Works. When that work was finished he sought employment in the same line without success.

While the question was close as to whether or not there was sufficient light to enable the plaintiff to see where he was going at the time of the accident, still, as to the contributory negligence, if any, on the plaintiff's part, that was a question of fact for the jury to determine, and not for the court to decide as a matter of law.

Little need be said as to the first reason assigned calling for a reversal of this judgment. Section 196 of the Code of Ordinances is entitled " Protection of floor openings," and reads as follows: " All floor openings within a building in the course of construction shall be enclosed or fenced in on all sides by a barrier of suitable height, except on those sides which may be used for the handling of materials hoisted through such openings, or at which stairs or ladders land, provided that such sides, other than landings, shall be guarded by an adjustable barrier not less than 3 nor more than 4 feet from the floor and not less than 2 feet from the edge of such opening." We do not believe that it was ever intended that this section was to apply to the construction of a subway station. The chapter of the Building Code of which this section forms a part

relates, generally speaking, to public buildings, residence buildings and business buildings. In charging the jury the court said in part: " You must decide whether or not the defendant obeyed section 196 of the Code of Ordinances relating to barriers which has been read to you. Disobedience of the ordinance, however, is not by itself negligence. It does not prove conclusively that the defendant was negligent; but if you find that the defendant failed to obey the ordinance, you may consider the fact in determining whether or not the defendant was negligent." While in all other respects the charge of the court properly and definitely covered the issues involved, still we believe that the jury may have been misled when their attention was directed to section 196 of the Code of Ordinances.

We are of the opinion that the verdict in this case was excessive. If we needed further proof to sustain our viewpoint in that regard, all we would have to do, after reading the record, would be to turn to the brief and note the studied effort of counsel for the plaintiff to avoid a correct statement of all of the facts as to the items of damage. The following is taken from the italicized portion which appears at page 3 of respondent's brief: " and at the time of the accident was making Ten Dollars per day, and was out of work for about three and one-half months subsequent to the accident, and since the accident has been working — relieving a superintendent of an apartment house once a week, earning the meagre sum of Three Dollars;" and further (at p. 48): " That the only work he had done from the time of the accident down to, and including, the trial, was for a period of approximately three months and that this job was given to him by a friend who helped him along in his work. That this work plaintiff had been doing was for one day a week, replacing the superintendent of a building, for which he received a small amount, namely, $3.00." These statements were made notwithstanding the fact that the plaintiff testified in substance that he went back to work about five or six weeks after the accident, in the same line of business, and that he continued to work at his trade for a period of about three and one-half months. This type of briefing is not to be tolerated.

Upon the retrial we would suggest that the case be presented in a manner which will tend to develop the facts and bring out the truth. There should be no resort to groundless argument for the purpose of influencing the jury after the court has ruled on the admission or exclusion of evidence. Persistent interruptions during cross-examination, apparently calculated to offset the effect thereof, should not be attempted.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., UNTERMYER and COHN, JJ., concur.

DORE, J. I concur in the result that a new trial should be granted since the erroneous charge in respect to section 196 of the Code of Ordinances, and the conduct of experienced trial counsel commented on in the majority opinion may have misled the jury in its determination upon the question of liability of defendant-appellant or the extent of the damages. Nevertheless, I cannot subscribe to the view of the majority that the award in this case would have been excessive, assuming legal liability was properly established. In so stating I wish it to be understood that I am in full accord with the majority opinion in so far as it condemns the type of briefing resorted to by the attorneys for the respondent.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.